**Jose ZAMBRANA, Appellant,**

v.

**Javier ARMENTA, Appellee.**

**No. 45A03–0401–CV–14.**

Court of Appeals of Indiana.

Dec. 30, 2004.

Rehearing Denied Feb. 24, 2005.

Theodore J. Johnson, Theodore J. Johnson & Associates, Valparaiso, IN, Attorney for Appellant.

Adrian P. Smith, Smith & DeBonis, LLC, Highland, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

On November 10, 2003, after a two-day bench trial, the trial court found Jose Zambrana negligent for injuries sustained by Javier Armenta as the result of a shooting outside a bar Zambrana owned. The trial court assessed compensatory damages against Zambrana in the amount of $850,000.00. Zambrana presents several issues for review:

1. Did the trial court err in finding Zambrana liable for Armenta's injuries?

2. Did the trial court err in its apportionment of fault under Indiana's Comparative Fault Act?

3. Were the damages assessed against Zambrana excessive?

We affirm.

The facts most favorable to the judgment demonstrate that in 1985, Zambrana purchased an existing and operating bar business in East Chicago, Indiana, named La Copa. Included in his purchase was the building where the bar was located and a retailer's liquor license. From 1985 until 1995, Zambrana assisted in the bar's operation but relied largely on family members to handle its daily management. In 1995, Zambrana retired and began to spend the majority of the year in Puerto Rico. Consequently, he decided to sell the bar business and property. Because Zambrana believed that keeping the bar open while seeking a buyer would allow him to main-

tain the liquor license and thus sell the property at a higher price, his family members continued to operate and manage the bar with Zambrana's knowledge.

Sometime after 1995, Henry Villareal contacted Zambrana's relatives and inquired about operating the bar business. The parties reached an oral agreement wherein Villareal and his partner, Mark Deleon, would operate the bar under the name High Rollers. Zambrana did not know Deleon or Villareal, but he knew High Rollers was open and operating as a bar business. In January 1998, at the time of Armenta's injury, High Rollers distributed alcohol to its patrons by virtue of a liquor license in Zambrana's name, High Rollers used Zambrana's tax identification number to purchase alcohol for the bar, and Zambrana paid taxes on the property and its liquor sales.

At approximately 2:30 a.m. on January 4, 1998, Armenta and two friends arrived at High Rollers. Upon entering the bar, they encountered the bouncer, a man known as Dee, who checked their identification and frisked them. It was bar policy to search all male patrons for weapons upon entry because the bar was located in a neighborhood plagued by high crime and frequent gang activity. Female patrons were not similarly searched. After using the restroom, Armenta witnessed his friend, Gustavo Barrera, engaged in a verbal confrontation with another bar patron, George Figueroa. Dee told Barrera and Figueroa to leave and pushed both men out the front door. Armenta followed. Once outside, Figueroa continued to argue with Barrera.

Daniel Demkowicz and his mother-in-law were also patrons at High Rollers on January 4, 1998. When Demkowicz entered the bar, Dee checked his identification and frisked him. Dee did not search Demkowicz's mother-in-law, who was carrying Demkowicz's handgun in her purse. After witnessing the fight between Figueroa and Barrera and a separate altercation in another area of the bar, Demkowicz attempted to leave. Dee blocked the door, brandished a handgun, and told Demkowicz and other patrons they could not leave. Demkowicz pushed past Dee, exited the bar, and retrieved his gun from his mother-in-law. Dee followed Demkowicz shortly thereafter, still brandishing his weapon and making eye contact with Demkowicz. In response, Demkowicz fired a warning shot in the air. Dee returned fire and a gunfight ensued between the two men during which Dee fired at least eleven shots. Armenta, who was still standing outside High Rollers with his friends, was shot in the neck and the bullet lodged in his spine.[1] Demkowicz was charged with aggravated battery, a class B Felony, and battery with a deadly weapon, a class C felony. In December 1998, Demkowicz pled guilty to criminal recklessness causing serious bodily injury, a class C felony.[2]

As a result of the shooting, Armenta's spinal column was severed, and he suffered damaged vocal cords and a broken collarbone. After surgery, Armenta underwent several months of rehabilitation to relearn basic life functions such as using the bathroom, eating, drinking, and dressing. Armenta also had to learn how to use a wheelchair. At the time of the trial,

1. Surgeons were unable to remove the bullet from Armenta's spine. Thus, it was impossible to conclusively determine which individual actually shot Armenta.

2. It is not clear from the record if criminal legal action was ever taken against Dee and little evidence was offered at trial about him other than that the parties believed he was dead.

Armenta remained paralyzed from the waist down.

In December 1999, Armenta filed a lawsuit against Zambrana, La Copa, High Rollers, and Demkowicz for damages resulting from his injuries. After a two-day bench trial, the trial court issued a general order finding that Demkowicz and Zambrana negligently caused Armenta's injuries and each were assessed compensatory damages in the amount of $850,000.00.[3] Demkowicz was also assessed punitive damages. On appeal, Zambrana asserts that the trial court erred by: (1) finding he acted in a negligent manner that proximately caused Armenta's injury; (2) incorrectly apportioning fault under the Indiana Comparative Fault Act; and (3) awarding excessive damages.

When reviewing the trial court's judgment we are mindful that the November 10, 2003 Order of Judgment (the Order) is a general order. That is, neither party requested findings and conclusions, as permitted under Ind. Trial Rule 52; rather, the trial court gratuitously entered some findings at the conclusion of the trial. "The trial court's findings control only the issues they cover, and we will apply a general judgment standard to any issue about which the court made no findings." *Rea v. Shroyer*, 797 N.E.2d 1178, 1181 (Ind.Ct.App.2003). We may affirm a general judgment based on any legal theory supported by the evidence. *Rea v. Shroyer*, 797 N.E.2d 1178. As we conduct our review, we presume the trial court followed the law, and "it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* at 1181 (citations omitted).

1.

Zambrana asserts that the trial court erred in finding that he acted in a negligent manner that proximately caused Armenta's injuries. In particular, Zambrana claims that he did not breach any duty to Armenta.[4] As noted previously, we may affirm the trial court's finding based on any legal theory supported by the evidence. *Rea v. Shroyer*, 797 N.E.2d 1178.

Armenta asserts that Zambrana had a duty to protect him from the criminal acts of Demkowicz and Dee. The parties both argue that whether or not Zambrana had a duty to Armenta should be determined using the "totality of the circumstances" test of *Vernon v. Kroger*, 712 N.E.2d 976 (Ind.1999). Under this test, courts were required to consider "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents." *Id.* at 980. While the number, nature, and location of prior similar incidents were substantial factors, the lack of prior similar incidents did not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable. *Vernon v. Kroger*, 712 N.E.2d 976. In *Paragon Family Rest. v. Bartoli-*

---

**3.** On December 10, 2003, Zambrana filed a motion to correct error and a simultaneous notice of appeal. On December 22, 2003, Armenta filed a motion to strike the motion to correct error arguing that the notice of appeal had divested the trial court of jurisdiction to hear the motion to correct error. On December 29, 2003, the trial court deferred its ruling on Zambrana's motion to correct error finding that Zambrana's notice of appeal had divested it of jurisdiction pending our resolution of the appeal.

**4.** Armenta also asserts, and Zambrana disputes, that the theory of respondeat superior applies to create vicarious liability. Since we hold that the evidence supports Zambrana's negligence under a direct liability theory, we need not reach this issue.

*ni,* 799 N.E.2d 1048 (Ind.2003), however, our supreme court explained application of the "totality of the circumstances" test was no longer necessary. Because the duty of a landowner to a business invitee was well-established, courts merely needed to look at the issue of foreseeability. *Id.* As our supreme court explained:

> [A]n individualized judicial determination of whether a duty exists in a particular case is not necessary where such a duty is well-settled. *Northern Indiana Public Service v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003). Thus, there is usually no need to redetermine what duty a business owner owes to its invitees because the law clearly recognizes that "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." *Id.,* (quoting *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct. App.1992)). This duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor. *Muex,* 596 N.E.2d at 267.

*Paragon Family Rest. v. Bartolini,* 799 N.E.2d at 1052. Thus, under Indiana law, landowners have a duty to take reasonable precautions to protect their business invitees from foreseeable criminal attacks. *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048. Further, the duty of a business to exercise reasonable care extends to providing a safe and suitable means of ingress and egress. *Id.* (citing *Vernon v.*

*Kroger Co.,* 712 N.E.2d 976). Thus, the question for our determination is whether Armenta's injuries resulted from a criminal attack that was reasonably foreseeable to Zambrana and for which Zambrana failed to exercise reasonable care?

■ Before answering this question, however, we must address Zambrana's claim that he was not the owner of High Rollers the night of Armenta's shooting. Zambrana asserts that because Deleon managed High Rollers for at least a year before the shooting, he was the owner of the property and the party responsible for Armenta's injuries.[5] Zambrana's argument is not well-taken. The evidence presented at trial demonstrated that Zambrana purchased the building and business from his brother, Jesse, in 1985. *See Appellant's Appendix* at 21. In 1998, the year of the shooting, Zambrana remained the sole owner of the property and business, paid taxes on the property and the liquor sold on the premises, and had the ability to exert control over the property, including evicting Deleon if he chose. Moreover, Zambrana *admitted* at trial that he owned the bar:

> [Attorney]: Mr. Zambrana, you are the owner of the property known as High Rollers bar, are you not?
>
> [Zambrana]: Yes.

*Transcript* at 194.[6] Zambrana's trial counsel also stipulated that Zambrana was the sole owner of the property and bar:

> [Armenta's Attorney]: Your Honor, I'm establishing my case that [Zambrana] owned the bar, he owned the liquor li-

---

**5.** Villareal testified that he and Deleon ended their working relationship sometime before the shooting and only Deleon was managing High Rollers at the time of Armenta's shooting.

**6.** Zambrana's Motion to Correct Error further supports Zambrana's ownership of High Rollers by virtue of his own admission: "[T]he only role defendant Zambrana played within the facts of the case was that he was the owner of La Copa and the High Roller's [sic] Bar." *Appellant's Appendix* at 10–11.

cense. As to relevancy, your Honor, he was—

[Zambrana's Attorney]: We would stipulate to that. We indicated he owned the bar. He owned the liquor license and he owned the property.

[Armenta's Attorney]: Your Honor—

[Zambrana's Attorney]: That's not disputed.

*Id.* at 191–92. The evidence supports the fact that at the time of Armenta's shooting, Zambrana owned High Rollers as a sole proprietor.

■ Regarding the foreseeability of the criminal attack, here, the subject property was located in an area of East Chicago, Indiana where gang activity and crime were prevalent. In recognition of this, the bar attempted to keep weapons, including guns, from being brought onto the premises by frisking male patrons as they entered. It was foreseeable that if weapons were brought inside the bar, confrontations occurring in the bar could escalate to criminal attacks involving those weapons. Indeed, altercations occurred frequently, as illustrated by the two separate fights Demkowicz witnessed in High Rollers on the night in question prompting his attempt to leave. The likelihood of a criminal attack also increases when the bar's bouncer is equipped with a handgun that he is unafraid to brandish at patrons and fire repeatedly. The evidence was sufficient to support the foreseeability of a criminal attack requiring Zambrana to take reasonable precautions to protect patrons.

■ "While landowners are not to be made the insurers of their invitees' safety, landowners do have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Harris v. Traini*, 759 N.E.2d 215, 223 (Ind.Ct. App.2001) (citation omitted). After he re-

tired in 1995, Zambrana effectively absolved himself of any responsibility relating to High Rollers. He testified that he intended to sell the bar when he retired to Puerto Rico, but believed that allowing the bar to remain open to maintain the liquor license would allow the property to sell at a higher price. To that end, he entrusted the supervision of the business and property to various family members, but failed to put any directives in place relating to, inter alia, the bar's management, or the hiring and training of security at the bar. Zambrana knew that individuals unknown to him began operating the bar circa 1997, and admitted the only effort he made to determine who those individuals were and how High Rollers was operating entailed phone calls to relatives which were unreturned. Rather than investigating further, Zambrana did nothing. In fact, he continued paying taxes on the property and the liquor sold at the property and renewing the liquor license so the bar could remain in operation. Zambrana's apparent attitude towards the operation of High Rollers is perhaps best illustrated by a portion of his deposition testimony admitted at trial:

Question: Did you ask your brother who was running the place?

Answer: I didn't care.

Question: Well, it's in your name sir.

Answer: Yes, but like I says, I was not involved, so I don't know who was running the place.

*Transcript* at 228. Therefore, the evidence indicates that although he was the sole owner of High Rollers, Zambrana exhibited complete indifference about anything related to the day-to-day operations of the business. Indeed, reducing his argument to its essence, Zambrana seeks immunity on precisely the basis of that indifference. The public policy implications of a rule conferring immunity on business owners *because* they are calculat-

edly indifferent to the details of the business's operation are obvious—and ominous. The evidence clearly supports a finding that Zambrana failed to take reasonable precautions to protect his patrons thereby breaching his duty of care.

Finally, "[a] negligent act is said to be the proximate cause of an injury 'if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.'" *Paragon Family Rest. v. Bartolini*, 799 N.E.2d at 1054 (citation omitted). "At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct." *Id.* But for Zambrana's negligent operation of High Rollers, Armenta would not have been injured. The trial court did not err in finding him negligent.

### 2.

Zambrana also asserts that the trial court's Order does not comply with Indiana's Comparative Fault Act (the Act). In particular, he claims: (1) the Order failed to apportion fault between himself and Demkowicz; (2) even if it can be inferred from the Order that the trial court intended to apportion fault equally between Zambrana and Demkowicz, such an apportionment is not supported by the record; and (3) the trial court failed to correctly apportion fault to nonparty actors.[7]

The Act reduces a defendant's damages in the case of fault-based claims. *See* Ind.Code Ann. § 34–51–2–7 (West 1998). When applicable, the Act operates to diminish a claimant's recovery by the amount of the claimant's contributory fault. *Burge v. Teter*, 808 N.E.2d 124 (Ind.Ct.App.2004). While "a 'breakdown' of fault attributable to each party does seem to be required by Indiana Code section 34–51–2–11," the Act does not require a trial court acting as the fact-finder to specifically state the percentage of fault attributable to each party. *Coffman v. Rohrman*, 811 N.E.2d 868, 873 (Ind.Ct. App.2004). Therefore, the trial court was not required to specifically state the percentage of fault attributable to Zambrana and Demkowicz. Despite this, it is clear from the Order that the trial court intended to assess a total of $1,700,000.00 in compensatory damages, of which Zambrana is liable for $850,000.00—or fifty percent. The Order states:

> The Court finds the plaintiff has incurred damages and losses as a result of the negligent conduct of the defendants and awards compensatory damages, in favor of the plaintiff and against the defendants, each of them, in the sum of Eight hundred fifty thousand dollars ($850,000.00).

*Appellant's Appendix* at 8. The court further held that Demkowicz should be assessed punitive damages "in an amount three times compensatory damages, or Two million five hundred fifty thousand dollars ($2,550,000.00)," *id.*, which is three times $850,000.00. Moreover, in the last paragraph of the Order, the trial court reiterates that Zambrana is liable for $850,000.00. Thus, it is clear the trial court assessed a total of $1.7 million in compensatory damages and apportioned

---

**7.** Zambrana additionally makes a vague argument that a statement made by Armenta's trial counsel "appears" to be a jury instruction regarding joint and several liability which was replaced by the Comparative Fault Act. Zambrana admits that "no objection was preserved in the record [by Zambrana] regarding [Armenta's attorney's] statements," but "nevertheless it appears the Court may have structured its damage award in reliance or conformity to it." *Appellant's Brief* at 9–10. As no objection was made, the issue is waived. *See, e.g., Geiger v. State,* 721 N.E.2d 891 (Ind.Ct.App.1999).

fault between Zambrana and Demkowicz equally, or fifty percent each.

 Zambrana claims, in the alternative, that if the trial court's intent was to equally apportion fault between Zambrana and Demkowicz, the evidence does not support such an apportionment. Apportionment of fault is uniquely a question of fact to be decided by the fact-finder. *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274 (Ind.Ct.App.2002). We defer to the fact-finder on findings of fact unless the finding is clearly erroneous, that is, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Berkel & Co. Contractors, Inc. v. Palm & Assoc., Inc.*, 814 N.E.2d 649 (Ind.Ct.App.2004).

Zambrana claims that his fault, if any, is far more remote than Demkowicz. He bases this argument on his assertion that he has not been responsible for the bar since 1995 when he retired to Puerto Rico and turned over supervision of High Rollers to his relatives. We remind Zambrana that he remained the sole owner of High Rollers at the time of Armenta's shooting. As discussed previously in greater detail, Zambrana knew High Rollers was open and being operated by unknown individuals. Despite this knowledge, Zambrana took no steps to determine who was operating High Rollers, let alone taking reasonable precautions to protect his business invitees, including determining whether High Rollers was being properly managed. In order to fetch a higher offer price from a potential buyer, Zambrana allowed his bar to remain open without insuring that it was being adequately supervised. Armenta was injured as a result of this negligent conduct. The trial court's apportionment of fault was not error.

 Finally, Zambrana claims—in a three-sentence argument—that the trial court erred in failing to assess any fault against nonparty actors. The Act permits a defendant to assert as a defense that the damages of the claimant were caused in full or in part by a nonparty. *McDillon v. Northern Indiana Pub. Serv. Co.*, 812 N.E.2d 152 (Ind.Ct.App.2004). "The burden of proof of a nonparty defense is upon the defendant, who must affirmatively plead the defense." *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind.2001); *see also* Ind.Code Ann. § 34-51-2-15 (West, PREMISE through 2004 2nd Special Sess.). Zambrana failed to argue any nonparties to the trial court and points to no evidence that establishes fault by nonparties. The trial court did not err in not apportioning fault to nonparties.

### 3.

 Finally, Zambrana claims the trial court's award of compensatory damages is excessive and against the weight of the evidence. In particular, he contends that since the trial court did not find Armenta permanently impaired or injured and awarded no future lost wages, the $1,7000,-000 compensatory damage award—of which Zambrana was responsible for $850,-000.00—was unjustified.

 "A damage award is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element." *Bee Window, Inc. v. Stough Enter., Inc.*, 698 N.E.2d 328, 330 (Ind.Ct.App.1998). In determining damages, we have explained:

> [T]he person injured by the negligence of another is entitled to reasonable compensation. *Kavanagh v. Butorac*, 140 Ind.App. 139, 144, 221 N.E.2d 824, 828 (1966). Courts have said that term means such sum as would reasonably compensate the victim both for bodily injuries and for pain and suffering. *Id.*

To that sum is added past, present, and future expenses reasonably necessary to the plaintiff's treatment and all financial losses suffered, or to be suffered, as a result of the inability to engage in his usual occupation. *Id.* "Compensation is the stated goal of a court when measuring damages for personal injuries." *Id.* (citation omitted). The question, as is so frequently raised in personal injury actions, is how much money reasonably compensates [victims] for their injuries and pain and suffering.

*Ritter v. Stanton,* 745 N.E.2d 828, 843 (Ind.Ct.App.2001). While no particular degree of mathematical certainty is required in determining damages, the award must be within the scope of the evidence. *Bee Window, Inc. v. Stough Enter., Inc.,* 698 N.E.2d 328.

At trial, Armenta offered uncontested evidence of $112,267.69 in medical bills and $4,125.00 in lost wages. Additionally, Armenta testified that before the shooting he was a healthy, twenty-three-year-old man working as a bus driver for handicapped children. After the shooting, he spent three months at a rehabilitation institute and continued therapy for several additional months in order to relearn, inter alia, how to speak, dress, and care for himself. It was also necessary for Armenta to learn how to use a wheelchair. Since the 1998 shooting, it is uncontested that Armenta has had no feeling in his body below his lungs and does not have the use of his legs. Armenta, however, offered no expert testimony on the permanent nature of his injury or his projected lost future earnings, prompting the trial court to note in its Order:

> The Court rejects plaintiffs [sic] contention that the Court should take judicial notice of the plaintiff's permanent impairment. Although the Court is cognizant that a severed spinal chord [sic], resulting in lower body paralysis is, based on the present state of medical technology, a permanent injury, the Court cannot make that finding in the absence of expert medical testimony. The Court further finds that plaintiff has failed to present any medical or other expert testimony in support of plaintiff's claim of continuing or future wage loss.

*Appellant's Appendix* at 8. Thereafter, the trial court found Zambrana negligent and assessed compensatory damages against him in the amount of $850,000.00.

Since Armenta presented no expert testimony on the permanent nature of his impairment or his lost projected earnings, awarding damages based on these factors would have been unsupported by the evidence. The trial court made clear, though, that it did *not* consider these factors. Armenta did testify about his quality of life before the shooting and his subsequent difficult adjustment to paralysis, including months spent in rehabilitation. Moreover, Armenta presented evidence that for the six years between the shooting and trial, he was without the use of his legs. Based on this evidence, the trial court's $850,000.00 compensatory damage award is within the scope of the evidence, and it is not so excessive so as to have been the product of prejudice, passion, partiality, corruption, or some other improper element. The trial court's damage assessment against Zambrana was not error.

Judgment affirmed.

DARDEN, J., and BAKER, J., concur.