Floyd L. PILES, Appellant–Plaintiff,

v.

Thomas GOSMAN, Appellee–Defendant.

No. 41A05–0509–CV–563.

Court of Appeals of Indiana.

July 31, 2006.

Thomas W. Vander Luitgaren, Van Valer Law Firm, Greenwood, IN, Attorney for Appellant.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Floyd Piles appeals the trial court's denial of his quiet title action and the granting of the counterclaim for declaratory judgment filed by Thomas Gosman. We affirm.

### Issue

Piles raises three issues. We address the dispositive issue, which we restate as whether the trial court properly concluded that Gosman had acquired the disputed property by adverse possession.

### Facts

From 1967 until 1972, Harold and Virginia Newkirk owned approximately fifty acres of property adjacent to U.S. 31. in Edinburgh. In 1972, they subdivided the property into two parcels and sold a seven-acre parcel to Edward and Carol Johnson. Later that year, the Johnsons sold the seven-acre parcel to Raymond and Rosemary Burton. In 1975, the Burtons sold the property to Thomas and Regena Sue Collett. All of the deeds contained the same legal description of the seven-acre parcel.

On May 22, 1998, Piles purchased the remaining approximately forty-two acres from the Newkirks. The deed from the Newkirks to Piles included a "modernized description" based on a survey Piles had performed prior to purchasing the property. App. p. 100.

The seven-acre parcel is located immediately north of Piles's property, and Camp Atterbury is located immediately south of

Piles's property. When Piles purchased the property from the Newkirks, there was a fence between the Colletts' property and Piles's property. The fence was there when the Colletts purchased the property from the Burtons in 1975. Although a portion of the fence fell into disrepair for part of the time that the Colletts owned the property, the Colletts believed the fence marked the property line. Piles's survey indicated, however, that the fence encroached on Piles's property by approximately fifteen feet. After the survey was performed, Piles discussed the results of the survey with Thomas Collett. Despite Thomas Collett's insistence that the fence marked the property line, Piles completed the purchase of the property. On April 20, 2000, the Colletts sold their property to Thomas Gosman.

On December 1, 2000, Piles filed a complaint to quiet title against Gosman, the Colletts, the residents of Johnson County, and any other person claiming an interest in the real estate. Gosman denied the allegations and filed a counterclaim seeking a declaratory judgment. On March 30, 2005, the allegations against the Colletts were dismissed with prejudice. Following a bench trial, the trial court quieted title in the land in favor of Gosman. The trial court's May 3, 2005 order provided in part:

3. When Plaintiff, Floyd Piles, purchased the property, a dispute arose as to the ownership of a certain fence line as identified at trial. The Plaintiff maintains that the fence line is incorporated in the modernized legal description and the Defendant denies said allegation.

4. The Plaintiff has failed to establish by a preponderance of the evidence that the fence line is in fact located on his parcel of property as legally described by their modernized description.

5. It would appear to the Court that, at best, an overlap of property may be contained in the legal description of the Defendant's property and the modernized legal description of the Plaintiff's property. In such a case, the Defendant is the legally vested title owner of the disputed area for the reason that the original Grantor conveyed the entirety of the 7.77 acre tract of land in 1972, and retained possession of the 42.33 acre tract of land. Upon subsequently transferring the 42.33 acre tract of land, in 1998, the Grantor (Newkirks) could only transfer title to the property which they legally owned. The Newkirks by adverse possession were divested of title to the disputed strip of land and therefore could not convey said land to the Plaintiff. See *Downing v. Eubanks,* 557 N.E.2d 1027 (Ind.App.1990).

6. Additionally, the Court finds that the fence line in question has remained at the same location since at least December, 1975 when Mr. Thomas R. Collett took title to the property. Mr. Collett testified that he continuously repaired and upgraded the fence; replaced an electric fence along the fence line; purchased livestock which used the area, had farm animals graze in the pasture and improved the disputed area by cleaning out the brush and planting a garden. "Where owners of adjoining premises establish, by agreement, a boundary or dividing line between their lands, take and hold possession of their respective tracts and improve the same in accordance with such division, each party, in the absence of fraud, will thereafter be estopped from asserting that the line so agreed upon and established is not the true boundary

line, although the period of time which has elapsed since such line was established and possession taken is less than the statutory period of limitations." *Clark v. Aukerman* 654 N.E.2d 1183 (Ind.App.1995).

It is clear that from the time Thomas Collett took title and possession (in 1972)[sic] and while the Newkirks were in possession of Plaintiff's land, the agreed fence line was in fact the boundary line and the parties treated such as the same.

7. Additionally, and in the alternative, the evidence in this case establishes title to the land owned by Mr. Gosman and his predecessors in title through possession of the disputed property for more than ten (10) years, which was actual, visible, open and notorious, exclusion, under a claim of ownership, hostile, and continuous for the statutory period of time. As a result, the Court declares the Defendant, Thomas Gosman, is in fact the owner of the disputed land by operation of law.

App. pp. 10–12. Piles now appeals.

## Analysis

Because neither the Chronological Case Summary ("CCS") nor the transcript indicate that the parties requested findings and conclusions pursuant to Indiana Trial Rule 52(A), the trial court's entry of such was sua sponte. Under such circumstances, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind.2005) (citing Ind. Trial Rule 52(A)). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment and when the trial court applies the wrong legal standard to properly found facts. *Id.* "While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo." *Id.* Where we are faced with mixed issues of fact and law, we apply an abuse of discretion standard. *Id.* To determine that a finding or conclusion is clearly erroneous, we must be left with the firm conviction that a mistake has been made. *Id.*

■ A trial court's findings control only the issues they cover, and we will apply a general judgment standard to any issues about which the court did not make findings. *Zambrana v. Armenta*, 819 N.E.2d 881, 886 (Ind.Ct.App.2004), *trans. denied* (2005). "We may affirm a general judgment based on any legal theory supported by the evidence." *Id.*

■ Piles initially points out that the trial court adopted Gosman's proposed findings and conclusions verbatim. However, Piles did not include a copy of the proposed findings and conclusions in his appendix and the CCS does not indicate that Gosman filed such. Even assuming that the trial court did adopt Gosman's proposed findings and conclusions verbatim, the practice of adopting a party's proposed findings is not prohibited. *See In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind.Ct.App.2005). "[A]lthough we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." [1] *Id.*

---

**1.** Because we are not persuaded by Piles's argument regarding the alleged verbatim adoption of Gosman's proposed findings and conclusions, it is unnecessary to strike the argument as Gosman requests.

■ Piles argues that the trial court erroneously concluded that the fence did not encroach on his property because the survey was uncontested and Piles testified as to the encroachment. Contrary to the survey and Piles's testimony, Collett testified that he did not agree with the survey, that the property lines had never changed, and that according to the survey, Piles's property encroached onto Camp Atterbury. Gosman testified that he believed the fence marked the property line and that the fence was consistent with the legal description contained in his deed. Although Gosman did not present a survey to contradict Piles's, the evidence of encroachment is not uncontroverted. Nevertheless, even if the trial court erroneously concluded that Piles failed to establish that the fence encroached on his property, the trial court properly concluded that Gosman established he owned the property by adverse possession.[2]

■ Our supreme court recently addressed the issue of adverse possession and began by clarifying the burden of proof in such cases. *See Fraley*, 829 N.E.2d at 483. The court concluded that adverse possession must be established by "clear and convincing" evidence. *Id.* The determination of whether such burden has been met falls within the sound discretion of the fact-finder, whose discretion is afforded deferential review. *Id.* In reviewing a judgment requiring proof by clear and convincing evidence, we may not impose our

"own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence."

*Id.* (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind.2002)).

The *Fraley* court clarified the elements necessary to prove a claim of adverse possession. The court concluded that a person without title may "obtain ownership to a parcel of land upon clear and convincing proof of control intent, notice, and duration." *Id.* at 486. The court summarized these elements as:

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

---

2. Piles also argues that the trial court improperly found that the fence served as an agreed boundary line because the issue was not properly pled and because it was based on inadmissible hearsay. Under this theory, when adjoining landowners agree to erect a fence and treat that as the legal boundary they are estopped from denying that it is the legal boundary line. *Freiburger v. Fry*, 439 N.E.2d 169, 172 (Ind.Ct.App.1982). "Use and improvement of the land up to the alleged

boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces." *Id.* "This line agreement is not only binding on those parties who agree but also their successors in interest so long as there was no fraud present in the making of the agreement." *Id.* However, because our decision is based on Gosman's claim of adverse possession, we need not address these arguments.

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.*

Our supreme court also addressed the applicability of Indiana Code Section 32–21–7–1 to adverse possession claims. At the time *Fraley* was decided, this section provided:

In any suit to establish title to land or real estate, possession of the land or real estate is not adverse to the owner in a manner as to establish title or rights in and to the land or real estate unless the adverse possessor or claimant pays and discharges all taxes and special assessments due on the land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely. However, this section does not relieve any adverse possessor or claimant from proving all the elements of title by adverse possession required by law.

Ind.Code § 32–21–7–1 (previous version).

Whether this statute was supplemental to the adverse possession statute of limitations or superceded it was first addressed by our supreme court in *Echterling v. Kalvaitis*, 235 Ind. 141, 126 N.E.2d 573 (Ind.1955). *Fraley*, 829 N.E.2d at 489. The *Echterling* court observed:

It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes.

*Echterling*, 235 Ind. at 147, 126 N.E.2d at 575–76. The *Fraley* court concluded that the tax statute was applied by the *Echterling* court to require the adverse claimant to substantially comply with the requirement for payment of taxes. *Fraley*, 829 N.E.2d at 490. "Although the opinion did not expressly mention that the claimant's failure to pay taxes on the claimed boundary strip was inadvertent and unintentional, we believe that this is the clear implication." *Id.*

Many courts followed *Echterling*. More recently, however, we have construed the tax statute's purpose as providing notice to the legal owner and concluding that, where clear notice was otherwise provided, the statute could be disregarded. *See id.* For the first time since *Echterling*, our supreme court addressed the issue of applicability of the tax statute in *Fraley*.

Because the legislature made no operative changes to the statute after *Echterling* was decided, the *Fraley* court took a restrained view of the legislative acquiescence in *Echterling's* interpretation of the

statute. *Id.* at 493. The *Fraley* court held:

> *Echterling* permits substantial compliance to satisfy the requirement of the adverse possession tax statute in boundary disputes where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession. But we decline to extend *Echterling* to permit total disregard of the statutory tax payment requirement merely on grounds that the legal titleholder has other clear notice of adverse possession.

*Id.*

The General Assembly approved this holding, when it amended Indiana Code Section 32–21–7–1, effective July 1, 2006, to read:

> In any suit to establish title to land or real estate, possession of the land or real estate is not adverse to the owner in a manner as to establish title or rights in and to the land or real estate unless the adverse possessor or claimant pays and discharges all taxes and special assessments *that the adverse possessor or claimant reasonably believes in good faith to be* due on the land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely. However, this section does not relieve any adverse possessor or claimant from proving all the elements of title by adverse possession required by law.

(Emphasis added). In sum, in addition to the common law elements of adverse possession, the adverse possessor must pay the taxes that he or she reasonably believes in good faith to be due on the land during the period of adverse possession.

Piles first argues that there is not clear and convincing evidence that Gosman or his predecessors, the Colletts, controlled the disputed property for the ten-year statutory period. Piles's argument relates only to a portion of the disputed boundary line in which there was not always a fence. The evidence indicates that when the Colletts purchased the property in 1975, there was a single-strand "barb wire" fence from the barn to U.S. 31. Tr. p. 105. Thomas Collett testified that he left the single-strand fence in place to keep the farmers from farming on his property. He stated that after the farmers broke the wire twice, he did not replace it. Instead, his father, his brother, and he used the disputed property as a garden. He then moved the garden closer to the house and in 1990, replaced the fence and used it as a pasture area. Thomas Collett testified that he used that area continuously and treated the fence line as the boundary line.

Piles contends that the Colletts' continued use of the property as a garden is of no consequence. Piles relies on *Beaver v. Vandall*, 547 N.E.2d 802, 804–05 (Ind.1989), in which our supreme court said that casual maintenance of a residential property such as planting, seeding, and mowing and the occasional placement of temporary structures such as propane tanks and a utility shed for less than the statutory possession was insufficient to serve as notice of the adverse possession. The issue here, however, is control, which is described as "a degree of use and control over the parcel that is normal and customary considering the characteristics of the land...." *Fraley*, 829 N.E.2d at 486.

The land at issue here was used for farming. Thomas Collett testified that after he stopped repairing the fence, he used the property as a garden and pasture and eventually rebuilt the fence. The Colletts' use of the property is consistent with its

character as farmland. We reject Piles's implicit argument that unless the Colletts continuously maintained a fence along the entire property line he could not have adversely possessed the property. There is clear and convincing evidence that the Colletts controlled the area at issue for more than the statutory period of ten years.

■ Piles also argues that there is insufficient evidence of notice because there is no evidence that the general community knew how the Colletts used the property and because people could not see the fence from U.S. 31. However, as the *Fraley* court explained, to establish notice, the adverse possessor's actions must have been sufficient to give actual or constructive notice to the legal owners, the Newkirks. *Id.* Shortly before the Colletts purchased the property, the Newkirks owned all of the property at issue as one parcel and subdivided it into two parcels. After the property was subdivided, the Newkirks farmed up to the fence line and treated the fence line as a boundary line. In fact, Thomas Collett testified that one of the farmers "broke the ground" for the Colletts' garden located on the disputed property. Tr. p. 172. This evidence is sufficient to establish that the Newkirks had notice of the Colletts' actions.

Finally, Piles argues that Gosman did not establish that the Colletts sufficiently complied with the tax statute. We note that the trial court made no findings regarding the payment of taxes, and we may affirm a general judgment based on any legal theory supported by the evidence. *See Zambrana,* 819 N.E.2d at 886. At the hearing, Thomas Collett repeatedly testified that he believed the fence was the property line and that he owned the property up to the fence. He testified that his taxes were always paid, but that he had never seen the description on the tax bill because his wife actually paid them.

Piles relies on *Floyd v. Inskeep,* 837 N.E.2d 569, 575 (Ind.Ct.App.2005), *trans. denied* (2006), in which we observed that there was no testimony or other evidence to support the trial court's finding that the parties had paid the taxes on their respective lots as required by the tax duplicates. We concluded, "Because of this dearth of evidence regarding Appellees' payment of taxes, a reasonable trier of fact could not correctly conclude that substantial compliance with Indiana Code Section 32–21–7–1 was established, let alone by clear and convincing evidence." *Floyd,* 837 N.E.2d at 575. Unlike in *Floyd,* here there is evidence regarding the Colletts' payment of the property taxes. Accordingly, we find *Floyd* inapposite to the facts before us today.

*Fraley* also provides little assistance in determining whether there is sufficient evidence that the Colletts complied with the tax statute. In *Fraley,* the trial court found that the alleged adverse possessors paid taxes on the their land adjoining the disputed tract but made no finding that they paid, intended to pay, or believed they were paying the taxes on the disputed tract. *Fraley,* 829 N.E.2d at 493. Our supreme court held, "considering the issues of law and the facts found by the trial court and the inferences reasonably drawn therefrom, a reasonable trier of fact could not correctly conclude that compliance with the adverse possession tax statute was established, let alone by clear and convincing evidence." *Id.* at 493.

In *Fraley,* however, the alleged adverse possessors knew when they purchased their property that the disputed tract was not described in their deed. *Id.* at 480. They believed the disputed tract was unclaimed and took possession of it. *Id.* That is not the case before us today. The evidence shows that the Colletts believed the fence marked the property line and

used the property up to the fence as if it were their own during the twenty-five years they owned the property. Thus, unlike in *Fraley*, when the Colletts paid their taxes they had a reasonable and good faith belief that they were paying the taxes on the property up to the fence—the disputed property. Considering the inferences reasonably drawn from the evidence, there is clear and convincing evidence from which a reasonable trier of fact could conclude that the Colletts complied with the tax statute.

Based on Thomas Collett's testimony, Gosman established the elements[3] of adverse possession with clear and convincing evidence. Because the Colletts acquired the property from the Newkirks by adverse possession, the Newkirks could not convey the disputed property to Piles. *Downing v. Eubanks*, 557 N.E.2d 1027, 1029–30 (Ind.Ct.App.1990) (" 'If a grantor conveys property, part of which belongs to the grantor and part of which belongs to another, the deed is good as to the property owned by the grantor and a mere nullity as to the property not owned by the grantor.' " (citation omitted)). The trial court properly concluded that Gosman is the owner of the disputed land.

### Conclusion

The trial court properly concluded that Gosman obtained the property at issue by adverse possession. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

**3.** Piles does not argue that the Colletts did not have the intent to claim full ownership of the disputed property.