**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 17 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARY LEE SCHIFF**
Ziemer, Stayman, Weitzel, & Shoulders, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**STACY K. NEWTON**
Jackson Kelly PLLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITY OF EVANSVILLE, | ) | |
| | ) | |
| Apellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1404-PL-171 |
| | ) | |
| ANNA K. WHITE, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1205-PL-245

**September 17, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Anna White ("White") filed a complaint in Vanderburgh Circuit Court against the City of Evansville ("the City") alleging that the City's negligent installation of a storm sewer damaged her property. The City filed a motion for summary judgment arguing White's negligence claim is barred by the Right of Entry and Release executed between White and the City. The trial court denied the City's motion for summary judgment and the City has filed this interlocutory appeal. The City argues that the Right of Entry and Release plainly and unambiguously disallows claims arising from its placement and installation of the storm sewer drainage pipe.

Concluding that White's claim is barred by the unambiguous terms of the Right-of-Entry and Release, we reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

White owns a home located on Kerth Avenue in Evansville, Indiana. The home was formerly her primary residence, but White now owns the home as a rental property.

In August 2010, the City sent a letter to White concerning a proposed drainage improvement project for her property on Kerth Avenue. Specifically, the City stated that the "improvements will include installing a storm sewer . . . and replacing the existing 12" diameter reinforced concrete pipe . . . with a 24" diameter reinforced concrete pipe." Appellant's App. p. 80. Because the existing 12" inch pipe was not within a drainage easement, the City requested a sixteen foot "drainage easement be granted for the proposed construction and future maintenance of the storm sewer." Id. Finally, the City also requested "a right-of-entry ten (10) feet south of the proposed drainage easement on to your property for construction" and stated that White's property would "be restored to

2

its original condition." Id. With the letter, the City included a map of the proposed project marking the-right-of entry area in yellow.

After White received the letter, she contacted the City to discuss her concerns with the project. White specifically requested that the City extend the drainage pipe further down the property line so that trash would not be dumped on her property. Id. at 49-51. On or about September 2, 2010, White received a letter from the City, which stated, "[p]er your request . . . the 24" storm sewer has been extended approximately 40 feet to the west. It will require the clearing of trees and brush to install the pipe and fill the existing ditch." Id. at 86. Enclosed with the letter was an aerial photograph of the property with a sketch detailing the location of the drainage easement, a legal description of the easement, and a document entitled "Right-of-Entry and Release."

On September 7, 2010, White granted the City "an Easement to construct, install, operate, control, maintain, repair, reconstruct and remove DRAINAGE FACILITIES and such other public facilities and utilities as the [City] may hereafter offer or furnish[.]" Id. at 98. White also executed the Right-of-Entry and Release, which provides:

> I/We agree to RELEASE AND HOLD HARMLESS the City of Evansville, its Officials, Employees, Agents and assigns against any and all claims, suits, actions, debts, damages, costs, charges and expenses, including Court costs and attorneys' fees, and all liability and losses of any nature, whether known or unknown, including acts of negligence of the City of Evansville, its Officials, employees, agents, and assigns, arising out of or in performance of the aforementioned work or service.

Appellant's App. p. 15.

The City began installation of the new 24" diameter storm sewer drainage pipe in January 2011. On or about February 26, 2011, shortly after installation of the drainage

3

pipe was completed, the basement of White's property flooded during a rain storm. The basement of White's property had not flooded for the previous ten to fifteen years.

White subsequently filed a tort claim notice against the City alleging that the City negligently installed the new storm sewer by completely blocking the drainage from her house. "This directly led to a complete saturation of the ground around the foundation of the house. This build up of water quickly breached the basement wall, even pushing or bowing the wall inward." Id. at 102. White further alleged:

> City engineers, Kerry Gostley and Jennifer Lott, both individually returned and inspected the project. Both admitted to Owner that the work blocked Owner's pipe. Kerry Gostley claimed that he did not receive the correct plans for the project. On February 28, City workers returned and unclogged Owner's pipe to the drainage. There have been no problems since that time. Lastly, a supervisor, unknown name, inspected the Owner's claim. He performed a dye test to determine if all drainage was properly flowing. He said that Owner's pipe is still clogged and the City was not to blame.

Id. at 103.

After the City denied liability, White filed a complaint against the City in Vanderburgh Circuit Court, which alleged that the City's negligence during construction of the storm sewer damaged her property. In its Answer and Affirmative Defenses, the City claimed that White's claim was barred by the Right-of-Entry and Release that White executed prior to the start of the drainage improvement project.

Thereafter, the City filed a motion for summary judgment. After a hearing on the motion, the parties were ordered to submit proposed findings of fact and conclusions of law. On February 3, 2014, the trial court denied the City's motion for summary judgment

4

after adopting White's Proposed Findings of Fact and Conclusions of Law verbatim.[1] Specifically, the court concluded that "the plain language of the Right of Way did not release the City from claims for Negligent construction[.]" Id. at 152. The court also concluded that the terms of the Right-of-Entry and Release "are ambiguous and uncertain"; therefore, "the parties should be allowed to present extrinsic evidence concerning the meaning of the agreement[.]" Id. at 154.

The City then requested that the trial court certify its order for interlocutory appeal. The trial court granted the City's motion on April 8, 2014, and our court accepted jurisdiction on May 23, 2014. The City filed its Notice of Appeal on May 29, 2014, and this appeal ensued.

**Standard of Review**

The standard of review of a trial court's order granting or denying summary judgment is well settled:

> A trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine

---

[1] The practice of adopting a party's proposed findings verbatim is not prohibited. Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc., 4 N.E.3d 677, 694 (Ind. Ct. App. 2014) (citing Piles v. Gosman, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006)). "'Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous.'" Id. (quoting Piles, 851 N.E.2d at 1012). "However, the wholesale adoption of one party's findings results in an 'inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court.'" CBR Event Decorators, Inc. v. Gates, 962 N.E.2d 1276, 1281 (Ind. Ct. App. 2012), trans. denied (quoting Prowell v. State, 741 N.E.2d 704, 709 (Ind. 2001)).

issue as to any material fact and that it is entitled to judgment as a matter of law. But a de novo standard of review applies where the dispute is one of law rather than fact. We examine only those materials designated to the trial court on the motion for summary judgment. [Where] the trial court ma[kes] findings of fact and conclusions [thereon] in support of its entry of summary judgment, . . . we are not bound by the trial court's findings and conclusions, [but] they aid our review by providing reasons for the trial court's decision. We must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record.

Altevogt v. Brand, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citations omitted).

Furthermore, the issue in this case centers on our interpretation of the Right of Entry and Release Agreement; therefore, we observe that the goal of contract interpretation is to determine the intent of the parties when they made the agreement. Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 813 (Ind. 2012). "We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." Id. "[C]onstruction of the terms of a written contract is a pure question of law for the court, reviewed de novo." Harrison v. Thomas, 761 N.E.2d 816, 818 (Ind. 2002).

**Discussion and Decision**

"'Generally, parties are permitted to agree that a party owes no obligation of care for the benefit of another, and thus, shall not be liable for consequences that would otherwise be considered negligent.'" Wabash County Young Men's Christian Ass'n, Inc. v. Thompson, 975 N.E.2d 362, 366 (Ind. Ct. App. 2012), trans. denied (quoting Marsh v. Dixon, 707 N.E.2d 998, 1000 (Ind. Ct. App. 1999), trans. denied)); see also Morfin v. Estate of Martinez, 831 N.E.2d 791, 801 (Ind. Ct. App. 2005) (stating "[a] release

6

agreement is a species of contract that surrenders a claimant's right to prosecute a cause of action").  Upholding release agreements "serves an important public policy because it facilitates the orderly settlement of disputes."  Moore v. Wells Fargo Const., 903 N.E.2d 525, 531 (Ind. Ct. App. 2009), trans. denied (citation omitted).  However, "an exculpatory clause will not act to absolve a party from liability unless it "'specifically and explicitly refer[s] to the negligence of the party seeking release from liability.'"  Wabash, 975 N.E.2d at 366 (quoting Marsh, 707 N.E.2d at 1000).

"A release, as with any contract, should be interpreted according to the standard rules of contract law."  Cummins v. McIntosh, 845 N.E.2d 1097, 1103 (Ind. Ct. App. 2006) (citation omitted), trans. denied.

> In general, if the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the document.  However, when the language in a contract is ambiguous or uncertain, its meaning is to be determined by the consideration of extrinsic evidence.  A contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation.

Id. (citations omitted).  See also Moore, 903 N.E.2d at 531 (stating "[a]bsent an ambiguity, release provisions are interpreted as a matter of law, and we look only to the instrument to ascertain the parties' intent").

The Right of Entry and Release at issue in this case provided in pertinent part:

[I]n consideration of the City of Evansville, . . . performing without cost to me/us the following work or service, to wit:

> Allow a maximum of ten (10) feet south and five (5) feet north of property adjacent to the proposed drainage easement for installation of a 24" storm sewer for drainage improvement project.  Property will be restored to original condition.

7

I/We the undersigned the owner of the above mentioned property or its designee agree to allow the City of Evansville or its contractor to enter the property to make the said repairs or perform said work.

I/We agree to RELEASE AND HOLD HARMLESS the City of Evansville, its Officials, Employees, Agents and assigns against any and all claims, suits, actions, debts, damages, costs, charges and expenses, including Court costs and attorneys' fees, and all liability and losses of any nature, whether known or unknown, including acts of negligence of the City of Evansville, its Officials, employees, agents, and assigns, arising out of or in performance of the aforementioned work or service.

Appellant's App. p. 15 (emphasis in original).

White argued, and the trial court found, that under the terms of the Release, "there was no release with regards to the construction of the sewer but rather a release of liability for allowing the particular portion of property to be used for a storm sewer. These acts are unique and distinct activities of the City–the designation of a piece of land for a storm sewer versus its action [sic] construction." Id. at 145; see also Appellee's Br. at 3 ("Plainly read, the City described its activity subject to the release as 'allowing' a certain portion of land for installation of a storm sewer, not 'constructing' the storm sewer itself.").

The City argues that the trial court placed undue emphasis on the term "allow" and the language immediately following wherein White agreed to allow City officials and contractors on her property. See Appellant's Br. at 13 ("What the trial court should have done is read the description of the work set forth in the release in its entirety rather than take the word 'allow' out of its proper context.").

By its plain terms, when she executed the Right-of-Entry and Release, White first agreed to allow City officials and contractors on her property to install the 24" storm

8

sewer. Specifically, the release states that White will "allow the City of Evansville or its contractor to enter the property *to make the said repairs or perform said work.*" Appellant's App. p. 15. Therefore, read in its entirety, the release unambiguously permits the City to enter White's property for the purpose of installing the 24" storm sewer. Importantly, White also agreed to release "any and all claims" against the City "arising out of or in performance of the aforementioned work or service." Id. And the release specifically includes claims resulting from the City's "acts of negligence." Id.

The parties' intent is readily ascertainable when the Right-of-Entry and Release is considered in its entirety. The City agreed to install the new 24" storm sewer on White's property at no cost to her to improve its drainage system. In exchange, White agreed to allow City officials and contractors to install the new storm sewer on her property and to release liability for any claims against the City arising out of the installation of the new storm sewer. For all of these reasons, we conclude that White's negligence claim is barred by the Right of Entry and Release executed between White and the City.[2]

**Conclusion**

The trial court erred when it denied the City's motion for summary judgment. We reverse the trial court's judgment and remand this case to the trial court with instruction to enter summary judgment in favor of the City.

Reversed and remanded for proceedings consistent with this opinion.

RILEY, J., and CRONE, J., concur.

---

[2] The City also argues that the trial court's findings are inconsistent and contradictory. Because we conclude that White's claim is barred under the plain terms of the Right-of-Entry and Release, we need not address this issue.

9