

**FILED**

Apr 30 2015, 9:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Jeffry G. Price
Peru, Indiana

ATTORNEY FOR APPELLEE

Robert Leirer Justice
Logansport, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

William Arnold Henry
and Mary Ann Henry,

*Appellants-Defendants,*

v.

Margo Liebner,

*Appellee-Plaintiff.*

April 30, 2015

Court of Appeals Cause No.
09A02-1401-PL-53

Appeal from the Cass Superior Court

Lower Court Cause No.
09D02-1203-PL-9

The Honorable Richard A.
Maughmer, Judge

**Pyle, Judge.**

## Statement of the Case

[1] This appeal involves a dispute over a triangular parcel of farm land ("the triangular parcel"), measuring 1.786 acres. This triangular parcel is located in between parcels of land owned by Appellee-Plaintiff, Margo Liebner ("Liebner"), and Appellants-Defendants, William Arnold Henry ("Henry") and Mary Ann Henry ("Mary Ann") (collectively, "the Henrys"). The dispute

arose because Liebner, who believed the boundary of her property was the northern edge of the triangular parcel, rented out the parcel for farming. After the Henrys disputed Liebner's possession and use of the triangular parcel and claimed that they owned it, Liebner filed a complaint for declaratory judgment of adverse possession against the Henrys. Liebner contended that she had established adverse possession of the triangular parcel from March 2004, when she purchased her property and began possessing and using the triangular parcel, to September 2011, when the Henrys challenged her possession and use of the parcel. She tacked this seven-plus-year period onto the period that her predecessors in title, who were not a party to this action, possessed and used the triangular parcel before 2004 in order to meet the ten-year required period to establish adverse possession. The Henrys, however, contended that they owned and had title to the triangular parcel, arguing that the property description in their 2011 quitclaim deed encompassed the triangular parcel. The trial court issued a judgment order, concluding that the Henrys did not have ownership of or title to the triangular parcel because a non-party, Liebner's predecessors in title, had acquired title to the triangular parcel via adverse possession in June 2000, well before the Henrys had purchased their land. The trial court, however, did not conclude that Liebner had obtained title to the triangular parcel by adverse possession; instead, the trial court concluded that the non-party or that non-party's heirs may have an interest in the parcel at issue.

[2]     The Henrys appeal the trial court's judgment, and their main argument is that Liebner failed to show that she and her predecessors had paid taxes on the

triangular parcel or complied with the adverse possession tax statute. We conclude that: (1) the trial court properly determined that the Henrys do not have title to the triangular parcel; (2) the trial court erred by concluding that the non-party predecessors had obtained title via adverse possession where there was no evidence presented regarding their payment of taxes or compliance with the adverse possession tax statute during the relevant ten-year period from June 1990 to June 2000; and (3) the evidence presented supports Liebner's claim of adverse possession because there is evidence regarding her and her predecessor's payment of taxes or compliance with the adverse possession tax statute during the relevant ten-year period from September 2001 to September 2011. Therefore, we affirm in part, reverse in part, and remand to the trial court to enter judgment in favor of Liebner on her adverse possession claim.

[3] Affirmed in part, reversed in part, and remand.

# Issue

[4] Whether the trial court erred in its conclusion regarding Liebner's adverse possession claim.

# Facts

[5] This appeal involves a boundary dispute over the triangular parcel, which consists of 1.786 acres of farm land contained in the Southeast Quarter of Section Five (5), Township Twenty-Eight (28) North, Range One (1) East of Harrison Township in Cass County. The triangular parcel is located in between and adjacent to Liebner's property and the Henrys' property. It is located immediately north of Liebner's property and immediately south of the Henrys'

property. The undisputed description of the triangular parcel, as set forth by the trial court in its judgment order, is as follows:

* * * * *

2. The [triangular] parcel is bounded on the north by a fence line stipulated to have been in existence before the year 1990.

3. Contiguous to and south of the fence line, Indian Creek traverses the length of the northern edge (excepting the fence line) of the [triangular] parcel.

4. On the west, the [triangular] parcel is bounded by real estate owned by another not a party to this litigation.

5. Liebner owns the parcel south of the [triangular] parcel.

6. Henry owns the parcel north of the [triangular] parcel.

7. The [triangular] parcel excepting the creek and fence line is farm ground.

8. The Liebner real estate south of the [triangular] parcel is farm ground.

9. The [triangular] parcel has no access to county road frontage, in other words the [triangular] parcel is landlocked.

10. Henry's access to the parcel requires negotiating an established fence line and crossing Indian Creek.

11.     Nothing separates the [triangular] parcel from Liebner's
        real estate.

12.     The character of the [triangular] parcel entices one to
        believe that the parcel is part of the Liebner real estate.

(App. 8).[1]

The relevant ownership of the triangular parcel, for purposes of this appeal, dates back to the 1960's. In 1962, Charles Niblock ("Niblock") and Marguerite Niblock ("Marguerite") (collectively, "the Niblocks") purchased 160 acres of land in Cass County that included the triangular parcel. After they purchased the land, the Niblocks rented out their land, including the triangular parcel, to Tommy Powlen ("Powlen") to farm.

---

[1] The Henrys' original Appellants' Appendix did not substantially comply with Appellate Rule 50 because they did not include all pleadings that were necessary for resolution of the issues raised on appeal. We ordered the Henrys to file an Amended Appendix that fully conformed to Appellate Rule 50. Instead of filing an Amended Appendix, they filed an Appellants' Supplemental Appendix that included some pleadings and documents that were not included in the original Appendix. The Henrys' Supplemental Appendix did not fully comply with Appellate Rule 50 because they failed to include other pleadings, including a copy of a Pretrial Order that included stipulated testimony from David Ide, which both parties referred to in their appellate briefs. Thereafter, without further direction from this Court, the Henrys filed a Second Supplemental Appendix, which included the remainder of the pleadings that they had failed to include in their Supplemental Appendix. Therefore, we have three Appendices before us, and we will refer to the original Appendix as "(App.)," the Supplemental Appendix as "(Supp. App.)," and the Second Supplemental Appendix as "(Second Supp. App.)."

[7]     On May 16, 1990, in preparation to convey a portion of their 160-acre-parcel, the Niblocks had a survey conducted. This May 16, 1990 survey, which set out the boundaries for a 31.354-acre parcel, did not include the triangular parcel. A couple of weeks later, on June 5, 1990, the Niblocks had another survey conducted, and this June 5, 1990 survey, which set out the boundaries for a 33.140-acre parcel, included the triangular parcel. Both surveys were recorded.

[8]     On June 8, 1990, the Niblocks conveyed 33.140 acres of their 160-acre parcel of land to David and Cheryl Ide (collectively "the Ides") via a warranty deed. The deed incorporated by reference the boundary description as set out in the June 5, 1990 survey.

[9]     After the Ides purchased the 33.140 acres of land from the Niblocks, Powlen continued to farm the Niblocks' remaining southern 126.86-acre parcel of land. Powlen also continued to farm the triangular parcel and paid rent or shares to the Niblocks. Powlen treated the triangular parcel as part of the Niblocks' southern parcel. The Ides did not object to Powlen's farming of the triangular parcel.

[10]    In December 1994, the Niblocks conveyed their 126.86 acres of land, via a quitclaim deed, to a trust with their son, John Niblock, as trustee ("Trustee"). The Niblocks maintained a life estate in the land and conveyed a remainder interest to Trustee. The deed set out that the Niblocks were conveying their 160-acre parcel "[e]xcepting therefrom" a parcel consisting of 33.140 acres. (Supp. App. 62; Plaintiff's Ex. 9 at 2). The deed set out the property boundary

description for this 33.140-acre parcel, which was the same description contained in the June 5, 1990 survey. Subsequently, in April 1996, Niblock died.

[11] On May 24, 2001, the Ides conveyed 21.861 acres of their 33.140-acre parcel to Kenneth and Kathleen Gibbs (collectively, "the Gibbses"). The deed for this conveyance included a description of the triangular parcel. After the Gibbs purchased the 21.861 acres, Powlen continued to farm the triangular parcel and pay rent to the Niblocks. The Gibbses did not object to the farming of the triangular parcel, and they believed that the triangular parcel was owned by the Niblocks and that the Niblocks paid taxes on it.

[12] Marguerite died in September 2003. Thus, at that time, the Trustee obtained his remainder interest in the Niblocks' 126.86-acre parcel of land under the quitclaim deed. Thereafter, Powlen continued to farm this parcel of land, including the triangular parcel, and he paid rent to the Trustee.

[13] In February 2004, the Trustee advertised that he was going to hold an auction to sell four tracts of the Niblocks' land, which included the 126.86-acre parcel of land just south of the triangular parcel. The property location map included with the auction announcement indicated that the triangular parcel was part of the 126.86-acre parcel of land.

[14] On March 15, 2004, the Trustee conveyed the 126.86-acre parcel of land to Liebner via a trustee's deed. The deed incorporated by reference a property description, which was the same description as set forth in the Niblocks'

quitclaim deed to when they conveyed their land to the trust in 1994.[2] Prior to purchasing the property, Liebner visited it and saw aerial photographs of the land, and the photos showed that the triangular parcel was part of the property being sold. Thus, at the time Liebner purchased the property from the Trustee, she believed that the triangular parcel was part of the conveyance. Liebner rented out the land, including the triangular parcel, to her son-in-law, Wesley Woodhouse, to farm. From the time Liebner purchased the land in 2004 until 2011, no one objected to Woodhouse's farming of the triangular parcel.

[15] In 2011, the Gibbses' mortgage was foreclosed by Green Tree, LLC ("Green Tree"). On January 5, 2011, Green Tree obtained title to the Gibbses' 21.861 acres via a sheriff's deed.

[16] A few months later, on May 16, 2011, Green Tree conveyed the 21.861-acre parcel to the Henrys via a quitclaim deed. Around the Fall of 2011, Henry told

---

[2] Specifically, the description in the trustee's deed indicated that the land conveyed was a 160-acre parcel "[e]xcepting therefrom" a parcel consisting of 33.140 acres. (Supp. App. 70; Plaintiff's Ex. 11 at 5). The deed set out the property description for this 33.140-acre parcel, which was the same description contained in the June 5, 1990 survey, except the description of the 33.140 acre-parcel in the trustee's deed contains an apparent scrivener's error. In their appellate briefs, the parties discuss this scrivener's error. The property description attached to the trustee's deed contained a measurement that added an additional 1,000 feet to it; the measurement provides that it is "1673.64" feet from "N 88-10-43 W" instead of "673.64" feet from that point. *Compare* (Supp. App. 70; Plaintiff's Ex. 11 at 5) *with* (Supp. App. 62; Plaintiff's Ex. 9 at 2). The parties agree that the measurement should be 673.64 feet. This scrivener's error, however, does not affect our analysis regarding the title to the triangular parcel.

Woodhouse that the triangular parcel belonged to the Henrys and said that they denied Woodhouse's or Liebner's right to possession. Henry sought to have Woodhouse pay rent to him for farming the triangular parcel, and Woodhouse refused. The Henrys then set up survey stakes around the triangular parcel and had a survey done. Thereafter, on September 23, 2011, the Henrys' attorney sent Woodhouse a letter, which provided:

> On May 16, 2011, Mr. and Mrs. Henry acquired 21.861 acres in the Southeast Quarter of Section 5, Township 28 North, Range 1 East in Cass County. The property has a common address of 9467 N 300 W.
>
> Subsequent to their purchase, Mr. and Mrs. Henry became aware that you are farming 1.6 acres of their property. A survey confirmed that you are trespassing on the Henry property. My understanding is that you and Mr. Henry have spoken about this matter and that you are familiar with the 1.6 acres in question.
>
> This letter is to inform you that further acts of trespass will not be tolerated. You are directed to cease and desist from entering upon the property of Mr. and Mrs. Henry. The Henrys will entertain your proposal to harvest crops from their property, but you must refrain from entering upon the Henry property until an agreement in writing is reached.
>
> Should you violate the directives of this letter, the Henrys intend to file a civil lawsuit against you for injunctive relief, damages, and attorney's fees. Thank you for your attention to this matter and your anticipated cooperation.

(Supp. App. 10).

[17]    Thereafter, in October 2011, Henry then contacted the Farm Services Agency ("FSA") of the United States Department of Agriculture ("USDA") and filed a Request for Farm Reconstitution so that the triangular parcel would be reflected as being part of the Henrys' land instead of Liebner's farm as it had been in the FSA records. The FSA subsequently granted Henry's reconstitution, effective for the 2012 crop, and combined the triangular parcel with the Henrys' farm for FSA purposes.

[18]    On March 30, 2012, Liebner filed a "Complaint for Ejectment." (Supp. App. 1). In her complaint, Liebner alleged that she was entitled to immediate possession of the triangular parcel based on adverse possession. She alleged that she and her predecessors in interest had had "continuous" possession of the parcel "since before 1983" and had "at all times believed they [had] paid all taxes" on the parcel. (Supp. App. 2, 3). Liebner asked the trial court to grant her immediate possession of the parcel.

[19]    Thereafter, the Henrys filed their answer to Liebner's complaint. The Henrys also filed a counterclaim against Liebner for slander of title, alleging that Liebner's "claim of ownership by acquiescence and by adverse possession was made with knowledge or with reckless disregard of the falsity of the claim." (Second Supp. App. 7).

[20]    Subsequently, Liebner filed an amended complaint and raised two counts: (1) Adverse Possession/Acquiescence; and (2) Injunction. In regard to her claim for adverse possession, Liebner alleged that, since June 8, 1990, she and her

predecessors-in-interest had continuously farmed the triangular parcel and that there was also a reasonable belief that the property taxes had been paid by these parties. Liebner argued that, "[b]y operation of the doctrine of adverse possession[,]" Marguerite and the Trustee "became owners of the triangular parcel by June 8, 2000" because it was "ten years after the sale from Niblocks to Ides[.]" (Supp. App. 38-39). At the same time, however, she argued that ownership of the triangular parcel was established via adverse possession to additional parties at a later date. For example, she argued that the Trustee became owner of the triangular parcel based on the doctrine of adverse possession in 2004 (as this date was ten years after the Niblocks had conveyed the property to the Trustee via the trust deed). She also argued that she owned the triangular parcel "by operation of the doctrine of adverse possession," but she did not specify an effective date of ownership. (Supp. App. 39). As for the second count of her amended complaint, Liebner sought a preliminary injunction so that she and her tenant farmer, Woodhouse, could have access to farm the triangular parcel during the pendency of the case.

[21] The trial court held a bench trial on November 18, 2013. On the morning of trial, Liebner filed a trial brief, in which she argued that she sought to establish adverse possession by tacking her period of possession (2004-2011) onto the Trustee's period of possession (1994-2004). She contended that the possession was "well in excess of the 10 years required." (Second Supp. App. 28). She also argued that she paid all taxes that were billed to her and thought that those taxes included payment for the triangular parcel.

[22] At the beginning of the trial, the parties introduced their exhibits into evidence without objection. During the trial, Liebner testified that she went to look at the property before purchasing it and that she also looked at aerial photographs of it. She testified that the photographs, the tract map, and the "sale bill" or advertisement for the property auction showed that the triangular parcel was part of the tract that she had purchased. (Tr. 11).

[23] Liebner's husband, Michael Liebner, also testified that the aerial photographs showed that the triangular parcel was part of the land that Liebner was buying. Liebner's husband also testified that he thought that the creek line that was north of the triangular parcel was the northern boundary of Liebner's property.

[24] Additionally, Woodhouse testified that when Liebner bought the land, he went out to look at the land and saw aerial photographs of it, and he testified that these photos showed the triangular parcel as part of her land. Woodhouse also looked at a plat book before Liebner purchased the property and saw that the triangular parcel was not part of the Niblock farm but thought that the plat book was inaccurate because "[p]lat books seem to follow a trend in errors." (Tr. 56). He also testified that the information set forth for the auction indicated that the triangular parcel was part of the land to be purchased.

[25] In regard to her payment of property taxes, Liebner testified that she had paid her property taxes since she purchased the property in 2004. Additionally, she testified that she believed that she was also paying property taxes on the triangular parcel.

[26]     Liebner also called Kathleen Gibbs Brubaker ("Gibbs") as a witness, and she testified about the Niblocks' and the Trustee's control of the triangular parcel and payment of taxes from 2001 to 2004. Gibbs, who purchased the 21.861 acres of land from the Ides in 2001 that was later purchased by the Henrys, testified that, when she and her husband owned their property, they did not exercise any control over the triangular parcel and did not make any improvements to it. She also testified that she had assumed that her property ended at the fence line by the creek that was north of the triangular parcel. Gibbs also testified that the survey she saw when she purchased the property showed that her property went to the creek and fence line. Additionally, Gibbs' affidavit, which was entered in evidence as Plaintiff's Exhibit 36, provided that she believed that the triangular parcel was "owned by Tommie Powlen's landlord, who she believe[d] was named Niblock." (Plaintiff's Ex. 36 at 2). According to her affidavit, Gibbs believed that Niblock paid the taxes on the triangular parcel and that she and her husband did not.

[27]     Liebner also called a Cass County Deputy Assessor ("deputy assessor") as a witness, and she testified that the acres contained on the property record card were pulled from recorded surveys and that her office did not normally conduct any investigation regarding the total acres listed on such cards. The deputy assessor also testified that Liebner's property record card contained a notation of a "Legal Ditch" that indicated there was "some form of water" on the parcel. (Tr. 92). Additionally, the deputy assessor testified that the Henrys' property record card did not indicate that they had been assessed for a ditch.

[28] Henry testified that he did not look at any aerial photographs before he purchased the 21.861 acres of land from Green Tree. He testified that when he purchased his property, he knew that Woodhouse was farming it, but he thought that the triangular parcel was part of his purchase. At the end of the bench trial, the trial court took the matter under advisement.

[29] Subsequently, on November 26, 2013, the trial court entered an "Order," concluding that the "Henry[s] [did] not have any ownership or title to the parcel." (App. 10, 11, 13). The trial court also concluded that Liebner did not have title to the triangular parcel. Instead, the trial court concluded that "[b]y operation of adverse possession law, title to the parcel passed to Niblock ten years (8 June 2000) after the conveyance of Niblock to Ide" and that "Niblock did not convey the parcel to Liebner."[3] (App. 10, 13). In regard to the Henrys' slander of title claim, the trial court concluded that "Liebner wins and owes nothing on Henry's counterclaim." (App. 10, 13).

[30] Thereafter, the Henrys filed a motion to correct error, arguing that the trial court's "'Order' [was] not clearly, on it's [sic] face, a judgment from which an appeal [could be] taken" because the Order did not contain the language of

---

[3] In its Order, the trial court referred generally to "Niblock" and did not differentiate between Charles and Marguerite Niblock or their son, who was Trustee.

Trial Rule 54(B) and because "the 'Order' suggest[ed] that a person not a party to the proceeding may have an interest in the real estate which is the subject of both parties' pleadings and of the court's 'Order.'" (App. 14). The Henrys also argued that the trial court had erred by: (1) determining that Liebner had acquired the triangular parcel by adverse possession; (2) "seem[ing] to suggest" that Liebner had acquired the parcel by acquiescence; and (3) denying their counterclaim. (App. 15).

[31] In Liebner's response to the Henrys' motion to correct error, she addressed the trial court's reference to a non-party's interest and asserted that:

> The suggestion by the Court that a non-party [Niblock heirs] may have an interest in the contested parcel is not an error and presents at best issues between Plaintiff Liebner and that non-party. Charles and Marguerite Niblock deeded their interests to a Trustee by the quitclaim deed dated 1995 and that Trustee succeeded to any rights they may have had. See Plaintiff's Exhibits 9 and 11, attached. Having sold the southern tract to Liebner in 2004 and represent[ing] at the time of sale that it included the contested triangular portion [See Plaintiff's Exhibit 10 attached] that Trustee is now estopped to deny that any interest he might have had then by virtue of adverse possession or acquiescence was retained by him.

(Supp. App. 83-84) (all brackets except "[ing]" bracket included in original).

On January 16, 2014, the trial court held a hearing on the Henrys' motion to correct error.[4] That same day, the trial court entered a "Final Judgment and Order." (App. 8). This order was exactly the same as the November 26th "Order" except its title. The trial court noted that this order should be entered Nunc Pro Tunc to 26 November 2013." (App. 10).[5] The Henrys now appeal.

## Decision

The Henrys appeal following the trial court's apparent denial of their motion to correct error. "We review a trial court's denial of [a] motion to correct error for an abuse of discretion, reversing only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

Additionally, here, the trial court entered findings and conclusions sua sponte following a bench trial.

> In the appellate review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the

---

[4] The Henrys did not request that this hearing be transcribed; thus, it is not part of the record on appeal.

[5] The trial court did not issue a separate order denying the Henrys' motion to correct error.

credibility of the witnesses. A judgment will be clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment, and when the trial court applies the wrong legal standard to properly found facts. While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo. Where cases present mixed issues of fact and law, we have described the review as applying an abuse of discretion standard. In the event the trial court mischaracterizes findings as conclusions or vice versa, we look past these labels to the substance of the judgment. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

*Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (internal citations and quotation marks omitted). "A trial court's findings control only the issues they cover, and we will apply a general judgment standard to any issues about which the court did not make findings." *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006). "'We may affirm a general judgment based on any legal theory supported by the evidence.'" *Id.* (quoting *Zambrana v. Armenta*, 819 N.E.2d 881, 886 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*).

[35] The Henrys argue that the trial court erred by entering judgment against them on Liebner's adverse possession claim. They do not, however, appeal the

denial of their slander of title counterclaim.[6] Thus, we will turn our attention to their challenge regarding adverse possession.

**Adverse Possession**

[36] The doctrine of adverse possession is one that "entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration[.]"[7] *Fraley*, 829 N.E.2d at 486. The *Fraley* Court summarized these required elements as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

---

[6] In their reply brief, the Henrys argue the "trial court's finding against [the] Henrys on their counterclaim is clearly erroneous." (Henrys' Reply Br. 3). The Henrys, however, did not challenge the trial court's ruling on their slander of title counterclaim in their initial appellate brief. "The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). Accordingly, the Henrys' challenge to the trial court's ruling on their counterclaim is waived.

[7] In *Fraley*, our Supreme Court rephrased the traditional common law elements of adverse possession, which required a claimant prove the possession was: (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for a statutory period of time. *Fraley,* 829 N.E.2d at 485.

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and

(4) Duration—The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* When discussing the requirement that these elements be established by "clear and convincing evidence," the *Fraley* Court explained that:

an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*Id.* at 483 (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002), *reh'g denied*).

[37] In addition to satisfying the elements of adverse possession set forth in *Fraley*, an adverse possessor must also comply with INDIANA CODE § 32-21-7-1 regarding payment of taxes. *Wetherald v. Jackson*, 855 N.E.2d 624, 641 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*. To acquire title, INDIANA CODE § 32-21-7-1—the adverse possession tax statute—requires an adverse possessor to pay all taxes and special assessments that the adverse possessor "reasonably believes

in good faith" to be due on the property during the period of the claimed adverse possession.[8]  This statute, however, does not relieve an adverse possessor from proving all the elements of title by adverse possession required by law.  I.C. § 32-21-7-1.

[38]  The elements of adverse possession must be satisfied for the statutory period of ten years.  *Flick v. Reuter*, 5 N.E.3d 372, 379 (Ind. Ct. App. 2014) (citing IND. CODE § 34-11-2-11), *reh'g denied*, *trans. denied*.  Because Liebner's asserted control of the triangular parcel was less than the required ten-year period, she was required to tack her use of the triangular parcel onto her prior possessor. "[S]uccessive periods of possession may be tacked together to attain the required statutory period" of adverse possession.  *Lake Cnty. Trust Co. v. Jones*, 821 N.E.2d 1, 4 (Ind. Ct. App. 2004), *reh'g denied*.  Once an adverse possession claimant has sustained her burden of establishing the requisite elements of adverse possession, "'fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner.'"  *Garriott v. Peters*, 878 N.E.2d 431, 439 (Ind. Ct. App. 2007) (quoting

_____

[8] We note that INDIANA CODE § 32-21-7-1 was amended with an effective date of July 1, 2014.  The trial court held the bench trial and issued its order before the effective date of the amendment.  Nevertheless, the above quoted language is contained in both versions.  Additionally, we note that prior to 2002, INDIANA CODE § 32-21-7-1 was previously codified at INDIANA CODE § 32-1-20-1.

*Snowball Corp. v. Pope*, 580 N.E.2d 733, 734 (Ind. Ct. App. 1991)), *trans. denied*; *see also Fraley*, 829 N.E.2d at 487 (explaining that "title by adverse possession passes to the claimant by law at the end of the possessory period" and that "[o]nce title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited . . . .").

[39]     The Henrys do not challenge Liebner's establishment of the elements of adverse possession for the seven plus years from the time she purchased her property and started to treat the triangular parcel as her own property in March 2004 to the time Henry objected to her possession and use of the triangular parcel in September 2011. Instead, they challenge whether Liebner satisfied her burden on her attempt to tack the Niblocks' possession of the triangular parcel in order to establish the necessary ten years of adverse possession. The Henrys make various arguments, but their main challenge on appeal is to whether Liebner met the requirement of showing that she and her predecessors had paid taxes on the triangular parcel and whether there was a sufficient showing of compliance with the adverse possession tax statute.[9] The Henrys' arguments are premised

---

[9] The Henrys also argue that Liebner failed to prove her claim of adverse possession because she could not tack the Niblocks' possession of the triangular parcel because the doctrine of estoppel by deed precluded them from adversely possessing the triangular parcel during the time period after they conveyed it to the Ides. Additionally, the Henrys assert that the trial court's judgment that Liebner had acquired title to the triangular parcel by adverse possession was "internally inconsistent" with its conclusion that Niblock obtained title to the same by adverse possession in June 2000. (Henrys' Br. 19). We need not address these arguments

on the assumption that the trial court concluded that Liebner had title to the triangular parcel based on adverse possession. The trial court, however, did not make such a conclusion.

[40] Here, the trial court concluded that neither the Henrys nor Liebner had title to the triangular parcel. Instead, the trial court concluded that "Niblock" had acquired title to the property in June 2000 by adverse possession from the Ides.[10] (App. 10). The trial court, therefore, determined that the Henrys did not have title to the triangular parcel when they received the deed from Green Tree because, at the time Green Tree had conveyed the quitclaim deed to the Henrys, it would not have had title to the triangular parcel. However, the trial court did not conclude or enter judgment that Liebner had adverse possession

---

because we conclude that the trial court's conclusion that the Niblocks had obtained title to the triangular parcel in June 2000 via adverse possession is clearly erroneous because there is no evidence regarding the Niblocks' payment of property taxes during the relevant period of June 1990 to June 2000. *See Daisy Farm Ltd. P'ship v. Morrolf*, 915 N.E.2d 480, 487 (Ind. Ct. App. 2009) (explaining that "although the parties present multiple issues bearing on the question of whether [a party] established its claim of adverse possession, we need not address all of them if we conclude that the proof with respect to a particular element is lacking, because the failure to establish any one element of an adverse possession claim defeats the claim") (citing *Fraley*, 829 N.E.2d at 476). Lastly, the Henrys argue that the trial court erred if it entered judgment in favor of Liebner based on her claim of acquiescence. Because the trial court did not enter judgment based on this claim, we will not address any arguments regarding acquiescence.

[10] Again, in the trial court's order, it did not differentiate among the various Niblock family members. In June 2000, Marguerite Niblock and the Trustee were the owners of the Niblock land immediately south of the triangular parcel. Thus, the trial court's conclusion that title to the triangular parcel passed to "Niblock" would have meant that it passed to Marguerite and the Trustee.

of the triangular parcel because it concluded that the Niblock Trustee did not convey it to Liebner.

[41] Given the trial court's conclusion that the Niblocks obtained adverse possession of the triangular parcel, we will review whether a reasonable trier of fact could conclude from the facts found by the trial court that the elements of adverse possession were established by clear and convincing evidence. *See Fraley*, 829 N.E.2d at 483.

[42] Here, the trial court determined that the Niblocks obtained title based on adverse possession in June 2000, but it did not make any finding or conclusion regarding the Niblocks payment of taxes or compliance with the adverse possession tax statute. Our Indiana Supreme Court, however, has explained that our courts cannot disregard the language and application of the adverse possession tax statute. *See Fraley*, 829 N.E.2d 492.

[43] Liebner contends that the Niblocks were not required to pay taxes on the triangular parcel or comply with the adverse possession tax statute, asserting that the Indiana Supreme Court has held that the requirement to show proof of payment of taxes on the disputed property "did not apply to claims of adverse possession made by property owners to property adjacent to property they already owned." (Liebner's Br. 15) (citing *Echterling v. Kalvaitis*, 126 N.E.2d 573 (Ind. 1955)). She argues that because the triangular parcel was contiguous to the Niblocks' parcel, then "payment of taxes was not required" on the triangular parcel. (Liebner's Br. 15). Thus, she seems to argue that she did not

need to show that the Niblocks complied with the adverse possession tax statute because their land was contiguous to the triangular parcel.

[44] To the extent that Liebner suggests that *Echterling* stands for the proposition that the adverse possession tax statute could be completely disregarded just because the Niblocks' land was contiguous to the disputed triangular parcel, we disagree. "Our Supreme Court made clear in *Fraley v. Minger* that the adverse possession tax statute may not be totally disregarded." *State v. Serowiecki*, 892 N.E.2d 194, 202 (Ind. Ct. App. 2008). *See also Flick*, 5 N.E.3d at 381 n.7 (disagreeing with the adverse possession claimant's contention that the tax payment requirement was inapplicable because the disputed land was part of a boundary dispute) (citing *Dewart v. Haab*, 849 N.E.2d 693, 696 (Ind. Ct. App. 2006); *Piles*, 851 N.E.2d at 1014-15.

[45] In *Echterling*, our Indiana Supreme Court reviewed the language of the original adverse possession tax statute[11] and the intention of the Legislature;[12] noted that

---

[11] The original 1927 adverse possession tax statute discussed in *Echterling* prohibited an adverse possessor from obtaining title to land "unless such adverse possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely[.]" *Echterling*, 126 N.E.2d at 574 (quoting Acts 1927, ch. 42, § 1, p. 119).

[12] When discussing the Legislature's intention for enacting the original adverse possession tax statute, the *Echterling* Court explained that the 1927 statute was "enacted to halt the pernicious effect of squatters upon lands where title holders had paid taxes on lands owned by them, but where possession of parts of the land

"complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers" and that they were "usually sketchy and inaccurate[;]" and observed:

> It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years[13] to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant.

*Echterling*, 126 N.E.2d at 575.  "The [*Echterling*] Court illustrated its intention regarding application of the tax statute with the following:

> An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes."

---

was usurped by squatters for long years without claim of title or payment of taxes."  *Echterling*, 126 N.E.2d at 575.

[13] Prior to 1951, the statutory limitation period for adverse possession was twenty years.  *See Fraley*, 829 N.E.2d at 484.

*Fraley*, 829 N.E.2d at 490 (quoting *Echterling*, 126 N.E.2d at 575-76).

[46]     In *Fraley*, our Indiana Supreme Court reexamined the holding in *Echterling* and explained that "the [*Echterling*] Court essentially applied the [adverse possession tax] statute to require the adverse claimant to *substantially* comply with the requirement for payment of taxes." *Fraley*, 829 N.E.2d at 490 (emphasis in original). The *Fraley* Court further noted that "[a]lthough the [*Echterling*] opinion did not expressly mention that the claimant's failure to pay taxes on the claimed boundary strip was inadvertent and unintentional, we believe that this is the clear implication." *Id.* Based on this interpretation, the *Fraley* Court held that:

> *Echterling* permits substantial compliance to satisfy the requirement of the adverse possession tax statute in boundary disputes where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession. But we decline to extend *Echterling* to permit total disregard of the statutory tax payment requirement merely on grounds that the legal title holder has other clear notice of adverse possession.

*Id.* at 493.[14]  Thus, contrary to Liebner's suggestion, the *Echterling* opinion did not allow for a complete disregard of the adverse possession tax statute.

[47]  The Henrys argue that there is "no evidence" of "Niblock's payment of taxes on the disputed parcel of such payment." (Henrys' Br. 14).  They contend that, even assuming that Liebner believed she was paying taxes on the triangular parcel since March 2004 after she had obtained title from the Trustee, there was no evidence that the Niblocks could have in good faith thought that they were paying taxes on the triangular parcel when they conveyed part of their property to the Ides.  The Henrys reason that the Niblocks' June 1990 survey—which included the triangular parcel in the land they were going to convey to the Ides—would have prevented them from reasonably believing that they were continuing to pay the taxes on the triangular parcel after they conveyed it to the Ides.

[48]  Liebner argues that the "trial court could and did find that Liebner's predecessors in title, Marguerite Niblock, and Charles Niblock [first as owners in fee simple, and then as life tenants] and John Niblock, Trustee, reasonably

---

[14] Following the supreme court's *Fraley* opinion, the legislature amended the adverse possession tax statute to provide that an adverse possessor could not establish title to land unless the adverse possessor discharged all taxes and special assessments that adverse possessor "reasonably believes in good faith to be due on the land or real estate during the period the adverse possessor . . . claims to have possessed the land or real estate adversely."  I.C. § 32-21-7-1 (effective Jan. 1, 2006 to June 30, 2014).

believed the property on which they paid taxes included the triangular portion because they treated it as part of the farm, and they paid taxes on the farm." (Liebner's Br. 12-13) (brackets in original).

[49]    However, the trial court's findings are silent on whether—during the relevant period of 1990 to 2000—the Niblocks or the Trustee had paid taxes on their land or the triangular parcel or had substantially complied with the adverse possession tax statute. The trial court made only two findings in regard to the payment of taxes: (1) "Liebner reasonably believe[d] in good faith to have paid all property taxes assessed and due on the [triangular] parcel[;]" and (2) "Gibbs believed that Niblock was paying the property taxes on the [triangular] parcel." (App. 9). While one of the findings refers to the Niblocks' payment of taxes, it is not in regard to taxes paid from 1990 to 2000, which is the relevant period to support its conclusion that Niblock obtained title via adverse possession in June 2000.

[50]    Our review of the record reveals that there is simply no testimony or other evidence regarding the Niblocks' or the Trustee's payment of taxes during the relevant period of June 1990 to June 2000. Thus, there is no evidence to support a finding (even an implicit one) that they had substantially complied with the adverse possession tax statute during the required ten-year period from 1990 to 2000 in order to support the trial court's conclusion that "Niblock" had acquired title to the triangular parcel in June 2000 based on adverse possession. Thus, the trial court's conclusion that title to the triangular parcel passed to Niblock by adverse possession in June 2000 is clearly erroneous because there is

no evidence, let alone clear and convincing evidence, that the Niblocks had paid taxes or substantially complied with the adverse possession tax statute for the relevant period between June 1990 and June 2000. *See e.g.*, *Fraley*, 829 N.E.2d at 493 (reversing the trial court's adverse possession judgment where it "made no finding that the [adverse possessor claimants] paid, intended to pay, or believed that they were paying[] the taxes on the disputed tract" and where it did not make a finding that there was substantial compliance with the adverse possession tax statute); *Flick*, 5 N.E.3d at 381 (reversing a trial court's summary judgment on an adverse possession claim because the claimant failed to show that she substantially complied with the adverse possession tax statute where she showed payment of taxes for less than half of the statutory ten-year period); *Floyd v. Inskeep*, 837 N.E.2d 569, 575 (Ind. Ct. App. 2006) (reversing the trial court's adverse possession judgment where there was no evidence that the claimants had paid taxes on their land adjoining the disputed property or that they "paid, intended to pay, or believed that they were paying the taxes on the disputed tract" and holding that the trial court, as a reasonable trier of fact, "could not correctly conclude" that there was substantial compliance with the adverse possession tax statute), *trans. denied*.

[51] Given our reversal of the trial court's conclusion that the Niblocks obtained title to the triangular parcel in June 2000, we will now turn to the Henrys' previous challenge to whether there is evidence to support Liebner's claim that she had obtained title to the triangular parcel by adverse possession. Because the trial court concluded that the Niblocks had obtained ownership of the triangular

parcel by adverse possession, it did not review whether Liebner had ownership by adverse possession, and it made no specific findings on this claim. We, however, may affirm a general judgment based on any legal theory supported by the evidence. *Piles*, 851 N.E.2d at 1012.

[52] The Henrys do not challenge Liebner's establishment of the elements of adverse possession for the seven plus years from the time she purchased her property and started to treat the triangular parcel as her own property in March 2004 to the time Henry objected to her possession and use of the triangular parcel in September 2011. Instead, they challenge whether Liebner satisfied her burden on her attempt to tack any prior adverse possession of the triangular parcel in order to establish the necessary ten years of adverse possession. The Henrys main challenge is to whether Liebner met the requirement of showing that she and her predecessors had paid taxes on the triangular parcel and whether there was a sufficient showing of compliance with the adverse possession tax statute.

[53] In regard to Liebner's payment of taxes during the period of 2001 to 2011, which is required to establish Liebner's adverse possession claim, the trial court determined that "[t]he legal description on Liebner's property tax statement encompasses the parcel" and that "Liebner reasonably believes in good faith to have paid all property taxes assessed and due on the [triangular] parcel." (App. 9). The Henrys challenge these findings (findings 29 and 30, respectively) as clearly erroneous, and they argue that Liebner "could not in good faith have thought that she paid the property taxes on a parcel [that] was not conveyed to

her, was not assessed to her, and was not included in her actual tax bill."
(Henrys' Br. 17).

[54] Contrary to the Henrys' argument, these findings are not clearly erroneous, and there is evidence to support them. Here, the parties introduced all of their exhibits at the beginning of the trial, and the property record cards for Liebner's property and the Henrys' property were admitted into evidence. Liebner called a deputy assessor as a witness, and she testified that Liebner's property record card contained a notation of "Legal Ditch" that indicated there was "some form of water" on the parcel. (Tr. 92). The deputy assessor also testified that the Henrys' property record card did not indicate that they had been assessed for a ditch. Additionally, the evidence showed that the triangular parcel went up to or included a creek. Thus, there was evidence from which the trial court could have concluded that Liebner's property tax statement included the parcel.

[55] Even if the trial court erred in so concluding, the trial court's finding that Liebner reasonably believed in good faith that she paid all property taxes assessed and due on the triangular parcel was not clearly erroneous. Here, it is undisputed that Liebner believed that she had purchased the triangular parcel and that she treated the disputed triangular parcel as her own property from the time she purchased it in March 2004 until the Henrys challenged possession and use of the triangular parcel in September 2011. She rented it, along with her remaining southern parcel, to Woodhouse to farm. Liebner specifically testified that she paid her taxes and believed that she was also paying taxes on the triangular parcel. Accordingly, there was evidence from which a reasonable

trier of fact could have concluded that Liebner complied with the adverse possession tax statute for the period from March 2004, when she purchased her property, to September 2011, when Henry objected to her possession of the triangular parcel. *See, e.g.*, *Wetherald*, 855 N.E.2d at 642-43 (holding that there was clear and convincing evidence from which a reasonable trier of fact could conclude that the adverse possessor claimants had complied with the adverse possession tax statute where the claimants testified that they believed that the disputed area was included in their payment of taxes); *Piles*, 851 N.E.2d at 1017 (relying on testimony to affirm a declaratory judgment for an adverse possession and holding that an adverse possessor claimant had met burden of showing compliance with adverse possession tax statute where the claimant's predecessor believed a fence marked their property line, used the property up to the fence as if it were his own, and testified that his taxes were always paid).

[56] Because the evidence supports a determination that Liebner complied with the adverse possession tax statute from March 2004 to September 2011, we now turn to whether there is evidence to support a determination that the Trustee complied with the adverse possession tax statute for the remaining period to make up the requisite ten-year adverse possession period necessary to establish Liebner's adverse possession claim, i.e., from March 2004 back to September 2001. During this time period, the Gibbses owned the property now owned by the Henrys.

[57] In regard to the Trustee's payment of taxes during this period, the trial court found that "Gibbs believed that the [triangular] parcel was owned by Niblock"

and that Gibbs believed that Niblock was paying the property taxes on the [triangular] parcel." (App. 9).

[58]  The Henrys argue that there was "simply no evidence to show that Niblock paid property taxes on the land conveyed to Gibbs." (Henrys' Br. 14). However, Gibbs testified that she assumed that her property ended at the fence line by the creek that was north of the triangular parcel. Additionally, in her affidavit, which was entered into evidence without objection, she averred that she believed that the triangular parcel was owned by Niblock and that she believed that Niblock paid the taxes on the triangular parcel and that she and her husband did not.

[59]  Liebner presented evidence from the Henrys' predecessor, Gibbs, who testified that she did not pay taxes on the triangular parcel and that Niblock had paid taxes on the disputed triangular parcel. Consequently, there is evidence to support a determination there was compliance with the adverse possession tax statute after the property was purchased by Gibbs in May 2001 until March 2004 when Liebner purchased her property from the Trustee. Accordingly, because there is evidence that Liebner and her predecessor complied with the adverse possession tax statute and because we may affirm a general judgment based on any legal theory supported by the evidence, we conclude that the trial court should have entered judgment against the Henrys and for Liebner on her adverse possession claim based on Liebner's adverse possession of the triangular parcel. *See, e.g.*, *Piles*, 851 N.E.2d at 1016-17 (affirming the trial court's judgment based on a theory of adverse possession even though the trial

court made no findings regarding the payment of taxes).[15]  Therefore, we remand to the trial court to enter judgment in favor of Liebner on her claim of adverse possession.

[60]     In summary, we conclude that the trial court correctly determined that the Henrys did not have title to the triangular parcel.  However, the trial court erred by concluding that the non-party Niblocks had obtained title via adverse possession where there was no evidence presented regarding their payment of taxes or compliance with the adverse possession tax statute during the relevant ten-year period.  Nevertheless, because we may affirm a general judgment based on any theory supported by the evidence and because there is evidence regarding Liebner's and her predecessor's payment of taxes or compliance with the adverse possession tax statute during the relevant ten-year period, we remand to the trial court to enter judgment for Liebner on her claim of adverse possession.

[61]     Affirmed in part, reversed in part, and remanded.

_____

[15] The Henrys argue that "the trial court's conclusion that Liebner and her predecessors in title had been paying taxes on the triangular parcel is inconsistent with the undisputed facts and therefore clearly erroneous." (Henrys' Br. 16).  The trial court, however, did not make such a finding.  While the trial court found that Liebner reasonably believed in good faith that she was paying the taxes on the triangular parcel, it did not specifically find that she had indeed paid the taxes.  Furthermore, the trial court made no explicit finding that the Trustee had paid taxes on the parcel.

Najam, J., and Bailey, J., concur.